INFINITY RECORDS, INC., Appellant, v PATHE NEWS, INC., Respondent.

First Department, November 9, 1982

APPEARANCES OF COUNSEL

*Robert C. Osterberg* of counsel (*Stuart Prager* with him on the brief; *Abeles Clark & Osterberg,* attorneys), for appellant.

*James J. Harrington* of counsel (*Lester Schwab Katz & Dwyer,* attorneys), for respondent.

OPINION OF THE COURT

*Per Curiam.*

At issue is a contractual dispute involving the exclusive right to manufacture and sell phonograph records derived from recordings made during the 1979 visit of Pope John Paul II to the United States. Based on defendant's representations that it had acquired the exclusive rights to the recordings from the United States Catholic Conference (USCC), the owner of such rights, plaintiff and defendant entered into a written agreement, dated September 28, 1979, and amended October 4, 1979, by which defendant, in consideration of an $80,000 payment to it, conveyed these rights to plaintiff. In the agreement defendant expressly warranted that pursuant to an agreement with the USCC, it was the sole and exclusive owner of all rights in the Papal recordings. Within a month of the execution of this agreement plaintiff learned that RCA Records, its competitor, was distributing copies of a phonograph record of the Papal visit entitled "Official Commemorative Recordings".

Plaintiff thereupon commenced this action seeking rescission, return of the $80,000, and damages allegedly suffered by reason of defendant's breach of the exclusive rights agreement. Defendant was served with a notice of deposition requiring it to produce at the deposition "[a]ll books, records, correspondence, memoranda, and other writings referring to, relating to or containing any reference to plaintiff or the [USCC]." When defendant was deposed on May 7, 1980 by its president, who had signed the September 28, 1979 agreement and subsequent amendment, it failed to produce any documents. No motion for a protective order had been made. When defendant's president testified that he had no recollection, one way or the other, of having any correspondence with the USCC, defendant's counsel promised to check the files for such correspondence. The deposition was adjourned to a date when defendant "could come back with these documents", as defendant's attorney had assured plaintiff's counsel, "I have no problem giving you documents."

Accordingly, the deposition was adjourned to May 23, 1980. On that date defendant again did not produce any

records, but its president testified that defendant, indeed, had had correspondence with the USCC, which correspondence had been turned over to its attorney. At that point defendant's attorney stated that he could not "recall at the moment any document the witness [was] referring to", but volunteered that he would search his files for any correspondence. Later, that same day, at the conclusion of the deposition, defendant's attorney was to characterize an answer by its president that he did not receive any letters from the USCC as follows: "I think it is now clear that so far as I know he didn't give me any correspondence because as he has testified, there wasn't any. But I will look and see."

Subsequently, plaintiff deposed the director of finance and administration for the USCC, whose testimony revealed the existence of a mailgram from the USCC to defendant on September 28, 1979, prior to the October 4, 1979 amendment and before payment of the $80,000, in which the USCC advised defendant that its decision to withdraw from the negotiations with defendant for the Papal recordings was final and that defendant "may not use USCC name in connection with cassette film or records." Another mailgram from the USCC dated October 17, 1979 informed defendant: "You have no right to represent yourself as having a relationship with the [USCC]. If you do not cease and desist such representations appropriate legal action will be taken." Both of these mailgrams were sent to defendant, care of its general counsel, who has represented defendant throughout these proceedings.

On the basis of this documentary evidence plaintiff moved for summary judgment or, in the alternative, to strike the pleadings or for other sanctions pursuant to CPLR 3126 based on defendant's willful refusal to produce documents properly sought. Special Term denied the motion in its entirety, finding that triable issues exist and that a proper notice to depose pursuant to CPLR 3120 must first be served before a party can be subjected to sanctions. The court also found that the motion for sanctions had been rendered academic since plaintiff had acquired the documents in question from an independent source.

■ We agree with Special Term that the matter is not ripe for summary judgment since a factual issue is posed as to whether defendant ever actually acquired, as it warranted, the exclusive rights to the Papal recordings. Moreover, it is not clear whether RCA received whatever rights it had to the Papal recordings from the USCC, the original source of plaintiff's claim to the exclusive rights. As to the alternative relief sought, however, we believe that the conduct of defendant and its attorney was so reprehensible that severe sanctions must be imposed.

■ It is clear from the content of the mailgrams that neither defendant's president nor its attorney could reasonably argue that he was unaware of their existence and relevance to the deposition and to the subject matter of the lawsuit. At the heart of the controversy is the ownership of the exclusive rights to the distribution of the recordings. The mailgrams are critically relevant to the question of whether defendant had authority to transfer these rights. No one who had been privy to the transactions between defendant and the USCC could be unaware of their existence or relevance. Indeed, on appeal, defendant eschews any claim that it was unaware of the existence of the mailgrams, but rather, with incredible temerity, makes a disingenuous, semantical argument that a mailgram does not constitute "correspondence".

No doubt, the failure to turn over these documents has caused plaintiff undue delay and cost. But, more importantly, counsel's actions tread dangerously close to the knowing withholding of evidence. The argument that absent a notice of discovery and inspection pursuant to CPLR 3120 defendant was not required to produce the documents sought fails because defendant did not move for a protective order pursuant to CPLR 3103, and, more importantly, its attorney agreed at the conclusion of the first session of defendant's deposition to produce any correspondence between defendant and the USCC.

CPLR 3126 permits a court to impose sanctions where warranted when a notice of disclosure is ignored. (See *Coffey v Orbachs, Inc.*, 22 AD2d 317; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3126.02 *et seq.*) The sanctions which may be imposed are varied, but we note that this

court has explicit statutory power to strike the pleadings of a nonresponsive party (CPLR 3126, subd 3). Because of the nature of defendant's conduct we would not hesitate to impose such drastic relief, were other remedies not available. In lieu of an outright striking of defendant's answer, we believe that the conditions we have attached are appropriate in the circumstances.

Accordingly, the order, Supreme Court, New York County (RICCOBONO, J.), entered September 21, 1981, denying plaintiff's motion for summary judgment, or, in the alternative, for an order striking defendant's pleadings or imposing other sanctions pursuant to CPLR 3126, should be modified, on the law, and in the exercise of discretion, with costs and disbursements to plaintiff, to the extent of granting the motion to strike the pleadings unless counsel for defendant pays to plaintiff the sum of $1,000 and defendant pays a full bill of costs to date to plaintiff, said payments to be made within 20 days of service of a copy of this court's order. Upon compliance with this court's order, the order appealed from, as modified, should be affirmed with costs and disbursements to plaintiff.

SANDLER, J. P., SULLIVAN, MARKEWICH and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on September 21, 1981, unanimously modified, on the law, and in the exercise of discretion, to the extent of granting the motion to strike the pleadings unless James J. Harrington, counsel for defendant pays to plaintiff the sum of $1,000 and defendant pays a full bill of costs to date to plaintiff, said payments to be made within 20 days of service of a copy of this court's order. Upon compliance with this court's order, the order appealed from, as modified, is affirmed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.