OPINION OF THE COURT
Arthur E. Blyn, J.
Motions under calendar Nos. 208 and 209 of July 19,1984 are consolidated for disposition.
The instant motions seek to hold in contempt Patricia Jacobson and Anne Carson, two Assistant Corporation Counsel who have acted as attorneys for respondent, the New York City Department of Consumer Affairs (DCA).
These motions are so devoid of merit that, ordinarily, the court would dispose of them summarily and turn its attention to more deserving matters. The court believes, however, that at a time when the Special Term, Part I Calendar often exceeds 200 motions daily and the court system is in danger of being overwhelmed, more drastic measures should be taken to discourage this type of frivolous motion practice.
The underlying proceeding was commenced by "petitioner in November 1983 to challenge DCA’s determination that petitioner is subject to DCA’s licensure under the “Midtown Store *496 Licensing Law”. Petitioner obtained a temporary restraining order prohibiting DCA, pending the hearing of the petition, from taking any steps to compel petitioner to obtain a license or from commencing any proceedings to sanction petitioner for the failure to obtain a license. On February 2, 1984, the return date of the petition, Justice Stecher refused to continue the temporary restraining order.
The petition was denied by Justice Stecher by decision dated February 14, 1984. A judgment was signed on April 3, 1984, which included the following provision: “2. The stay imposed upon respondent by Justice Sullivan from (a) taking any steps or actions to make petitioner obtain a license, or (b) from initiating or implementing any proceeding to sanction petitioner for its failure to obtain a license, is vacated the fifth day after service of a copy of this judgment with notice of entry”. (Emphasis added.)
The judgment was entered with the county clerk on April 20, 1984. The county clerk stamped the judgment with the following: “filed and docketed April 20, 1984 at 10:34 a.m. N.Y. Co. Clerk’s office”. Counsel for petitioner was personally served with a copy of the judgment — including the county clerk’s stamp — on April 25, 1984.
At the request of Patricia Jacobson, a DCA inspector visited petitioner’s premises on May 2, 1984, and found petitioner to be operating without a license. On May 11, 1984, Jacobson prepared and served a notice of hearing relating to the charge that petitioner was operating without a license. A copy of the notice was served upon petitioner’s attorney. Jacobson alleges that: “Mr. Hoffman [petitioner’s attorney] subsequently telephoned me, inquired whether I would be handling the DCA Administrative Hearing, and informed me that there ‘would be a surprise on the date of the hearing’. At no time did he deny that he had been served with an entered judgment”. On June 4, 1984, Anne Carson caused an amended notice of hearing to be served on petitioner, which set June 25, 1984 as the new hearing date.
On June 5, 1984, petitioner’s attorney personally served Jacobson with the within notice of motion to hold her in contempt of Justice Stecher’s order, on the ground that she had initiated sanction proceedings against petitioner without having served a copy of the judgment “with notice of entry”. That same day, in order to “clear up any misconception as to when the Judgment and Notice of Entry was served”, but without admitting that the prior service of the judgment was not sufficient, the Corporation Counsel’s office "served another judgment with the often used *497 “Notice of Entry back”. This did not, however, signal the end of the game petitioner (and his counsel) were playing.
Carson’s June 22,1984 affidavit states that: “On June 8,1984, petitioner’s attorney telephoned me to suggest that the Department allow petitioner to pick up its license without filing a new application. He said that if the Department were to follow his proposed course of action, he would drop the contempt charges against Patricia Jacobson and forego filing such charges against me”. DCA allowed petitioner to pick up its license, but petitioner was required to file a new application. A second amended notice of hearing was served, returnable on June 25, 1984.
The notice of motion to hold Carson in contempt of Justice Stecher’s order was served on or about June 12, 1984.
The court will initially dispose of petitioner’s sole substantive argument, that the judgment herein was not served “with notice of entry” as required by Justice Stecher’s order.
Petitioner’s argument is one of form over substance. Clearly, the file stamp of the county clerk on the copy of the judgment served upon petitioner’s attorney conveyed all of the information which would have been contained in a separate “notice of entry”. The purpose of the provision requiring “notice of entry” in Justice Stecher’s order was merely to ensure that DCA could not commence enforcement proceedings without a five-day grace period for petitioner. That purpose was achieved with the service of a copy of the judgment showing the file stamp of the county clerk.
The decision in Harvey v Hammer (42 Misc 2d 1096), cited by petitioner, is not on point. The court in Harvey equated the facts there with the line of cases bearing on the question of the commencement of time to appeal, an analogy that is not applicable here. In addition, there is no indication that the copy of the order served in Harvey contained the clerk’s file stamp.
The case of Oesterreicher v Oesterreicher (70 NYS2d 647 [Supreme Ct, NY County, 1946]), however, involved circumstances very similar to the instant situation. There, the plaintiff moved to punish defendant for contempt by reason of his failure to comply with the terms of a judgment which directed him to pay certain moneys into court. In opposition to the motion, the defendant in Oesterreicher argued, inter alla, that the certified copy of the judgment which was served upon him did not contain a formal notice of entry upon the cover of the document. The court rejected this argument, holding “(4) Finally, the defendant argues that the certified judgment which was served upon him contained no formal notice of entry upon the cover of the paper *498 served upon him and that therefore it is invalid. The argument is untenable. The judgment served upon the defendant had attached to it a certificate of the County Clerk attesting to the fact that the paper so certified was a correct copy of the final judgment which was pn file and entered in the County Clerk’s office on July 18,1946. In this court’s opinion the certification of the County Clerk attesting to the entry of the final judgment constituted a sufficient notice of entry to start the defendant’s time within which to comply with the judgment and direction of the court” (p 652).
While this court is not, of course, bound by the decision in Oesterreicher (supra), it does find the reasoning therein to be persuasive here. The information provided to the defendant in Oesterreicher was certainly no greater than that provided in this case by the photostat of the clerk’s “FILED” stamp.
Accordingly, the court concludes that DCA was entitled to commence enforcement proceedings against petitioner on April 30, 1984, five days after personal service of the April 3, 1984 judgment.
It may well be that petitioner’s counsel, acting in good faith, believed that the absence of a separate “notice of entry” did not trigger the running of the time period set forth in the judgment. In that case, he had several appropriate alternative courses of action available to him, including notice to DCA of their failure to comply with the judgment, or even refusing to appear at the scheduled hearing, and attacking any determination rendered thereat on the ground that the hearing was barred by the terms of the judgment. Those alternatives did not, however, properly include a “surprise” contempt motion served on the day of the scheduled hearing.
The second contempt motion served on Anne Carson on June 12, 1984, is even less excusable. As noted above, any possible “contempt” by DCA was cured by service of an indisputedly proper “notice of entry” on June 5,1984, following service of the first contempt motion on Patricia Jacobson. The service of the second contempt motion was obviously intended for use as a bargaining chip in petitioner’s negotiations with DCA (the court notes, in this regard, that in his reply affidavit petitioner’s counsel fails to refute DCA’s account of his conversations with the DCA attorneys).
The use of a motion for contempt as a negotiating tool, or to threaten and intimidate — especially against attorneys — constitutes an abuse of the process of this court which cannot be tolerated.
*499 The court believes that, upon denial of motions as frivolous and groundless as these, the party opposing the motion must be compensated for its unnecessary expenditure of time and effort. The time has come for the Bar to realize that it cannot waste the time of the court, fellow attorneys and litigants with impunity.
In this context, the motion costs “not exceeding forty dollars” authorized by CPLR 8202 are meaningless. The fairest method of making the party responding to the motion “whole” is the award of attorneys’ fees, assessed against the attorney for the party responsible for the frivolous motion practice — an alternative long utilized in the Federal courts under similar circumstances. The court concludes that it may make such an award under the broad authority vested in it under Judiciary Law § 750 et seq.
Accordingly, petitioner’s motions to hold Patricia Jacobson and Anne Carson in contempt are denied. Counsel for petitioner shall pay DCA attorneys’ fees in the sum of $2,000 within 10 days of service of a copy of this decision/order with notice of entry.