OPINION OF THE COURT
Eugene P. Bambrick, J.
This motion demonstrates that persistence prevails, and that when one fights City Hall, using the services of an attorney might not be enough. In this instance, the services of a private investigator enabled plaintiff’s attorney to discover that a witness who the defendant City of New York alleged was no longer in its employ was, in fact, an employee and should have been produced for a court-ordered examination before trial.
The question is posed: Who should bear the costs of the private investigator? The pertinacious plaintiff or the dilatory defendant? In addition, there is another question with regard to CPLR 8202: Does the $40 ceiling for the “amount of costs on motions” preclude the court from granting the successful movant a pecuniary allowance in a higher amount for his expenses of the motion?
The circumstances underlying this motion are as follows:
*345 This is an action for personal injuries, conscious pain and suffering and wrongful death allegedly sustained by the plaintiff’s decedent Vernell Burrows, as a result of the alleged negligence and medical malpractice of the defendants, City of New York, New York City Department of Corrections, the Rikers Island Detention Facility, the Board of Corrections, Peter Tufo, Chairman of the Board of Corrections, and the New York City Health and Hospitals Corporation, in the medical care and treatment rendered to the decedent on June 21, 1979, while he was an inmate at the Rikers Island Detention Facility.
The action was commenced by service of a summons and complaint; issue was joined; and thereafter a bill of particulars was served in response to the demands of the defendants.
Plaintiff then served a notice for examination before trial upon the defendants, and on June 26,1981, a Correction Department officer was deposed. At the conclusion of said examination before trial, plaintiff requested a further examination before trial of the defendant City of New York by three additional employees. When the defendant city refused to comply with said request, a motion was made, and in an order dated November 16,1982, Mr. Justice Giaccio directed the defendant City of New York to produce the three individuals in question for examination before trial, including “the Medical Officer serving Corrections Department who treated Vernell Burrows on June 21, 1979”. On or about December 16, 1982, examinations before trial of two employees of the defendant city were held pursuant to the court order; however, with respect to the medical officer who was ordered to be produced, the defendant City of New York declared that Dr. Tiya R. Freeman-Parks, the doctor in question, was no longer within their employ and supplied plaintiff with what was purported to be her last known address.
It appears that the plaintiff thereafter attempted to serve a subpoena and a notice for nonparty examination before trial on Dr. Freeman-Parks at the last address supplied by the defendant city, but no such Dr. Freeman-Parks was known at that address.
Plaintiff persisted and made a motion for discovery of the employment application of Dr. Freeman-Parks, and in an order dated July 11,1984, Mr. Justice Goldstein directed an in camera review of said employment application, which was to be held at Special Term, Part II, in August 1984. As a result of this in camera inspection, the plaintiff was supplied with additional information as to the last known address of Dr. Freeman-Parks, the medical school she attended, and her medical license number.
*346 Whereupon plaintiff turned the matter over to a private investigator, i.e., Dante Investigators, to locate Dr. Freeman-Parks. After a considerable investigation, the Dante Investigators determined that the addresses given on Dr. Freeman-Parks were no longer valid, but that the said Dr. Freeman-Parks was still employed by the defendant City of New York at Rikers Island Detention Facility.
The plaintiff has annexed to the moving papers a copy of the bill by Dante Investigators for the investigation, in the sum of $387.70, along with a copy of the investigation report.
This motion by plaintiff is twofold: (1) for an order directing the defendant City of New York to produce for an examination before trial its employee Dr. Tiya R. Freeman-Parks; and (2) that “costs and sanctions” (the terms used by plaintiff in the moving papers) be fixed against the defendant City of New York in the sum of $387.70, the fee incurred for the said investigation.
The defendant City of New York has no objection to producing Dr. Frepman-Parks, and in an affirmation made the following statement: “Your affirmant would like to apologize for the confusion surrounding the employment of Dr. Freeman. (Dr. Freeman has dropped Parks from her name). At the end of 1982, Dr. Freeman discontinued her employment with the defendants. Shortly afterwards, this office notified the plaintiff of this, and gave the last known address of Dr. Freeman. On July 30th, 1984, Dr. Freeman resumed working for the City, under a different name, having dropped the ‘Parks’ in the interim.”
In the opinion of this court, the excuse proffered by the defendant city is inadequate. The order of Mr. Justice Giaccio dated November 16, 1982 placed the defendant city on notice that Dr. Freeman-Parks was to be produced in mid-December 1982. The fact that Dr. Freeman (Parks) discontinued her employment with the defendants “at the end of 1983” is simply no excuse for her nonappearance in mid-December What further exacerbates this dereliction is that pursuant to the order of Mr. Justice Goldstein, an in camera inspection of the employment records of Dr. Freeman (Parks) was held on September 5,1984, before Mr. Justice Hyman, and despite the fact that the said Dr. Freeman (Parks) returned to the city’s employ on July 30,1984, the defendant City of New York was supplying plaintiff with outdated and useless information.
Under the circumstances herein, the court finds no compunction in awarding the plaintiff the sum of $387.70, to be borne by the defendant City of New York. This is not to say that the conduct of the defendant city was willful or contumacious. *347 Nevertheless, this court is of the opinion that the lackadaisical manner in which the defendant city responded to the order of Mr. Justice Giaccio, dated November 16, 1982, where a private investigator hired by the plaintiff was able to find out who was in the employ of the defendant city at a time when the defendant city did not know who its own employees were, is conduct that is inexcusable and dilatory, resulting in inordinate delay, and warrants the sanctions herein imposed.
The court realizes its authority to impose such sanctions under CPLR 3126 “[to] make such orders with regard to the failure or refusal as are just”, and there is a plethora of case law wherein sanctions were fixed as a matter of course. (See, Donner v 50 Tom Corp., 99 AD2d 504; Everin v Greyhound Elevator Corp., 97 AD2d 832; George v Massachusetts Plate Glass Ins. Co., 97 AD2d 748, 749; Infinity Records v Pathe News, 89 AD2d 423, 426; Passarelli v National Bank, 81 AD2d 635, 636; First Natl. State Bank v Schwartzman, 60 AD2d 641, 642; Cinelli v Radcliffe, 35 AD2d 829; see also, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3126:ll, p 653.)
By granting such an allowance to the movant plaintiff, is the court ignoring the mandate of CPLR 8202, which reads:
“Amount of costs fixed on motion
“Costs awarded on a motion shall be in an amount fixed by the court, not exceeding forty dollars in counties within the city of New York, and twenty dollars in all other counties”? According to Black’s Law Dictionary 312 (5th ed), the definition of “[c]osts” is: “A pecuniary allowance, made to the successful party (and recoverable from the losing party), for his expenses in prosecuting or defending an action or a distinct proceeding within an action”. (See also, Fed Rules Civ Pro, rule 54 [d] [in 28 USC, Appendix]; Fed Rules App Pro, rule 39 [in 28 USC, Appendix].) At first blush, it would appear that the expenses incurred by the plaintiff herein for the services of a private investigator in order to be successful in this motion, when recovered from the defendants would, in effect, constitute an award of “costs”, which has a ceiling of $40 pursuant to CPLR 8202.
As noted, the court realizes its authority under CPLR 3126, but also finds the amount granted to the plaintiff herein to be in the nature of “disbursements”, not “costs” (as used in plaintiff movant’s papers). Such a taxable disbursement is allowable pursuant to CPLR 8301 (b), which provides: “Disbursements on motion. Upon motion of any party made after the determination of a motion, or upon its own initiative, the court may allow any *348 party thereto to tax as disbursements his reasonable and necessary expenses of the motion.” The court finds the expenses incurred by the plaintiff for the services of Dante Investigators, as documented by the bill annexed to the moving papers, to be “reasonable and necessary” expenses of the motion.
Unlike Black’s definition, the CPLR distinguishes between “costs” and “disbursements” as noted by Joseph M. McLaughlin (Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C8301:l, p 191): “Disbursements are reimbursement for the actual out-of-pocket expenses incurred by a party in the prosecution of his action. Unlike costs, disbursements cannot be recovered without proof that expenses were actually incurred.”
On the subject of “costs”, plaintiff argued in the moving papers as follows: “Your affiant at the present time respectfully requests * * * that furthermore costs be granted against the City of New York in the sum of $387.70 which consists of the investigator’s fee as stated above and does not even take into consideration the voluminous amount of time spent by your affiant’s office in attempting to obtain the information from the City of New York by motions in making numerous motions for said information and in following up with this investigation.”
Although the amount of $387.70 has been determined to be either “sanctions” pursuant to CPLR 3126 or “disbursements” under CPLR 8301 (b), the plaintiff is correct, in the opinion of this court, in asserting that “costs” are a proper vehicle for the court to weigh the “voluminous time” and expense of motion practice, which could have been avoided. However, as pointed out by Joseph M. McLaughlin (Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR art 82, p 177): “The CPLR maintains the New York tradition of awarding only nominal sums as costs. If the purpose of * * * costs is to reimburse a successful litigant for the expenses of recovering his judgment, the minimal amounts involved continue to be ludicrous.”
The statutory history of the amount of costs to be awarded upon a motion, culminating in CPLR 8202, is proof of this tradition. Originally, Civil Practice Act § 1505 provided that the amount of costs upon a motion was $10. This maximum was in effect for over 80 years. In 1962, the maximum allowable costs were increased from $10 to $20 (L 1962, ch 308) and in 1972 from $20 to $40 within New York City (L 1972, ch 734, § 8; ch 735, § 6). Most commentaries admit to the inadequacy of this provision. As stated in 8 Weinstein-Korn-Miller, NY Civ Prac If 8202.01, at 82-19): “In light of the complexity of present-day *349 litigation and the high cost of living, even these figures are unrealistically low if viewed as an attempt to reimburse the party awarded motion costs.” (See also, Legislative Studies and Reports, McKinney’s Cons Laws of NY, Book 7B, CPLR 8202, p 182.)
Mr. Justice Blyn recently cited the futility of this provision, as follows: “In this context, the motion costs ‘not exceeding forty dollars’ authorized by CPLR 8202 are meaningless.” (Matter of Photosound v Gourdine, 126 Misc 2d 495, 499.) It would appear that many courts avoid the statutory ceiling of “costs” by resorting to the “sanctions” of CPLR 3126, or, in the manner of Mr. Justice Blyn, by imposing a substantial award “under the broad authority vested in it under Judiciary Law § 750 et seq” (Supra, p 499.) Perhaps it is time that the Legislature addresses the “meaningless” of CPLR 8202, and makes it more meaningful by allowing for “reasonable costs within the discretion of the court.” Instead of looking for indirect authority from CPLR 3126 or Judiciary Law § 750, this court is of the opinion that the time has come for the Legislature to grant the courts the direct authority to assess meaningful costs under CPLR 8202, as a warning and clear message to derelict and delinquent members of the Bar that they cannot waste the time of the courts, fellow attorneys and litigants with impunity.
Accordingly, for all the foregoing reasons, the court directs the defendant City of New York to pay the plaintiff the sum of $387.70
The defendant City of New York, by its employee Dr. Tiya R. Freeman (Parks), is directed to appear and submit to an examination before trial at the office of the clerk of Special Term, Part II, on the 5th floor of the courthouse on March 21,1985, at 10:00 a.m. All documents relevant to said examination shall be produced at that time.